BUCHALTER
A Professional Corporation
KEVIN COLLINS (SBN 185427)
ALISSA R. PLEAU-FULLER (SBN 285907)
MIKHAIL PARNES (SBN 300922)
500 Capitol Mall, Suite 1900
Sacramento, CA  95814
Telephone: 916.945.5170
Email: kcollins@buchalter.com
        apleaufuller@buchalter.com
        mparnes@buchalter.com

Attorneys for Plaintiff
LENDERS FUNDING, LLC,
a New York limited liability company

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LENDERS FUNDING, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CASH4CASES, INC., a New Jersey corporation; JAESON BIRNBAUM, an individual; KENNETH BIRNBAUM, an individual; and LIBERTY BRIDGE CAPITAL MANAGEMENT GP, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 3:19-cv-8096<br><br>**COMPLAINT FOR:**<br><br>1. **Breach of Written Contract (The Agreement and Amendments);**<br>2. **Breach of Written Guaranty (J. Birnbaum Guaranty);**<br>3. **Breach of Written Guaranty (K. Birnbaum Guaranty);**<br>4. **Fraud in the Inducement;**<br>5. **Intentional Misrepresentation/Fraudulent Misrepresentation;**<br>6. **Negligent Misrepresentation;**<br>7. **Conspiracy to Defraud;**<br>8. **Money Had and Received;**<br>9. **Open Book Account;**<br>10. **Account Stated;**<br>11. **Conversion;**<br>12. **Constructive Fraudulent Transfer (N.J.S.A. §§ 25:2-25, 25:2-27);**<br>13. **Fraudulent Transfer (N.J.S.A. §§ 25:2-25, 25:2-27); and**<br>14. **Appointment of Receiver.** |

**COMPLAINT**

Plaintiff, Lenders Funding, LLC ("LF") alleges as follows:

## I.   INTRODUCTION

1.   Over the last ten years, LF has loaned Defendant Cash4cases, Inc. ("C4C") millions of dollars through various loan and security agreements and related amendments.  LF secured its loans through various security agreements, as well as personal guarantees from individual Defendants Jaeson Birnbaum ("J. Birnbaum"), C4C's President, and Kenneth Birnbaum ("K. Birnbaum"), J. Birnbaum's father and an investor in C4C.

2.   LF and C4C enjoyed a profitable, mutually beneficial relationship, until, on a date unknown to LF, C4C and J. Birnbaum began falsifying C4C's records, transferring collateral, and double-pledging or double selling its assets, to induce LF (and others) into loaning more money to C4C or to purchase fictional assets, while at the same time transferring assets out of C4C.

3.   In November 2019, LF was told by various knowledgeable individuals that J. Birnbaum and C4C had been falsifying records and committing fraud, as well as transferring assets.  Moreover, in December 2019, J. Birnbaum and C4C's counsel reported that J. Birnbaum and C4C were proceeding to retain an individual from an outside organization to serve as a third party "Chief Restructuring Officer" for C4C.  These troubling facts create the need for this action and the immediate appointment of a receiver by this Court in order to protect LF's interest in the more than $5,000,000 that C4C and J. Birnbaum owe LF.

4.   In this action, LF seeks repayment of $5,000,000 in monies loaned to C4C, plus accrued interest, which remains past due at this time, as well as injunctive relief and the appointment of a receiver.

## II.   PARTIES

5.   LF is a limited liability company organized under the laws of the state of New York and registered to do business in California as a foreign entity.  At all times relevant to this action, LF maintained an active license with the California Department of Business Oversight as a commercial finance lender.  LF provides commercial financing to lenders and factors by entering into participation agreements whereby LF purchases a participation interest in certain loans or by

making direct loans to them.  LF's managing (and sole) member is L.O. Annie, Inc., a California corporation domiciled in California with its principal place of business in California.  The President and sole shareholder of L.O. Annie, Inc., resides in Coronado, California, and is a citizen of, and domiciled in the State of California.

6.     C4C is a corporation organized under the laws of the state of New Jersey.  C4C's principal place of business is in the State of New Jersey.  On information and belief, J. Birnbaum treated C4C as J. Birnbaum's mere instrumentality such that it constitutes J. Birnbaum's alter ego.

7.     J. Birnbaum, an individual, is C4C's President.  Upon information and belief, J. Birnbaum resides in, and is, a citizen of, and domiciled in the State of New Jersey.

8.     K. Birnbaum, an individual, upon information and belief, resides in and is a citizen of, and domiciled in, the State of New Jersey.

9.     Liberty Bridge Capital Management GP, LLC ("Liberty") is a Delaware limited liability company with its sole member as J. Birnbaum, who resides in, is a citizen of and is domiciled in the State of New Jersey.

10.     LF is informed and believes that J. Birnbaum and C4C transferred assets to various individuals and entities, but is unaware of the true name, capacity, or full basis for liability of those unknown parties and therefore may amend this Complaint to allege the true name, capacity, or basis for liability when the same have been ascertained.

11.     At all times relevant to this action, each defendant was the agent, servant, employee, partner, joint venturer, or surety of the other defendants and was acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other defendants in doing the things alleged in this Complaint.

## III.     JURISDICTION

### A.     Subject Matter Jurisdiction

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties to this action and the amount in controversy exceeds $75,000, exclusive of interest and costs.  LF is a limited liability company

and its sole member is a California corporation with its principal place of business in California. Defendants K. Birnbaum and J. Birnbaum are domiciled in states other than California. C4C is a New Jersey corporation with its principal place of business in New Jersey.

### B.    Personal Jurisdiction

13.    This Court has personal jurisdiction over C4C because: (1) C4C has purposefully availed itself of the privilege of doing business in California by continuously, systematically, and regularly conducting business within the State of California, and (2) in the Loan and Security Agreement, C4C consented to this Court exercising jurisdiction over any action arising under that agreement or any related agreement. This action seeks to enforce C4C's breach of the Loan and Security Agreement and thus fits within that agreement's forum selection clause. Exercising personal jurisdiction over C4C comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

14.    This Court has personal jurisdiction over J. Birnbaum because J. Birnbaum consented in his Guaranty to LF to having this Court exercise jurisdiction over any action arising under that agreement or any related agreement. This action seeks to enforce his breach of that Guaranty and thus fits within his Guaranty's forum selection clause. Exercising personal jurisdiction over J. Birnbaum comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

15.    This Court has personal jurisdiction over K. Birnbaum because K. Birnbaum consented in his Guaranty to LF to having this Court exercise jurisdiction over any action arising under that agreement or any related agreement. This action seeks to enforce his breach of the K. Birnbaum Guaranty and thus fits within his Guaranty's forum selection clause. Exercising personal jurisdiction over K. Birnbaum comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

16.    This Court has personal jurisdiction over Liberty as J. Birnbaum, Liberty's sole member, has agreed to personal jurisdiction over him in California for the purposes of the loans by LF and Liberty is J. Birnbaum's alter ego. This action involves the loans by LF to C4C and various transfers of C4C assets to Liberty by J. Birnbaum. Thus, exercising personal jurisdiction

over Liberty comports with traditional notions of fair play and substantial justice.  *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

**IV.     VENUE**

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.  Moreover, Defendants K. Birnbaum, J. Birnbaum and C4C have agreed to venue in this Court in their agreements with LF.

**V.     INTRADISTRICT ASSIGNMENT**

18.     Under Civil Local Rule 3-2, this civil action should be assigned to the San Francisco Division, because a substantial part of the events or omissions giving rise to the claims occurred in Marin County and San Francisco County.

**VI.     ALTER EGO ALLEGATIONS**

19.     On information and belief, LF alleges that at all times relevant hereto, J. Birnbaum was the alter ego of C4C, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between J. Birnbaum and C4C such that any separateness between them has ceased to exist in that J. Birnbaum completely controlled, dominated, managed, and operated C4C to suit his convenience.

20.     On information and belief, LF alleges that at all times relevant hereto, J. Birnbaum was the alter ego of Liberty, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between J. Birnbaum and Liberty such that any separateness between them has ceased to exist in that J. Birnbaum completely controlled, dominated, managed, and operated Liberty to suit his convenience.

21.     Specifically, upon information and belief, LF alleges that at all times relevant hereto, J. Birnbaum: (1) controlled the business and affairs of C4C; (2) commingled the funds and assets of the corporate entities, and diverted corporate funds and assets for his own personal use; (3) disregarded legal formalities and failed to maintain arm's length relationships among the corporate entities; (4) inadequately capitalized C4C; (5) held himself out as personally liable for the debts of C4C; (6) used C4C as a mere shell, instrumentality or conduit for himself; (7) used

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

C4C to procure labor, services or merchandise for other persons or entities; and/or (8) used C4C to shield against personal obligations, and in particular the obligations as alleged in this Complaint.

## VII.   FACTUAL BACKGROUND

22.     Since approximately May of 2009, but for a short hiatus when no loan balance was outstanding, LF has loaned money to C4C.  Since the commencement of LF and C4C's relationship, J. Birnbaum and K. Birnbaum have expressly guaranteed C4C's obligations to LF.

23.     On information and belief, C4C is in the business of purchasing from tort plaintiffs all or a portion of their recovery from the litigation whether achieved by settlement or success after trial (the "Cases").  On information and belief, C4C's business model with respect to the Cases is either: (i) holding them until they are resolved, with the profit being the difference between the purchase price and the amount of the recovery paid to C4C, (ii) reselling Cases to buyers, or (iii) borrowing against the held Cases until they are closed.

### A.     <u>Loan and Security Agreement and Amendments Thereto</u>

24.     On or around January 22, 2018, LF and C4C entered into a Loan and Security Agreement ("Agreement").  A true and correct copy of the Agreement is attached and incorporated into this Complaint as **Exhibit A** (certain commercially sensitive and personal information has been redacted from certain Exhibits incorporated into this Complaint).

25.     In February 2018, LF and C4C entered into a First Amendment of the Agreement, increasing the advanced amount to $3,000,000.  A true and correct copy of the First Amendment is attached and incorporated into this Complaint as **Exhibit B**.

26.     On or around March 12, 2018, LF and C4C entered into a Second Amendment of the Agreement, increasing the advanced amount to $3,500,000.  A true and correct copy of the Second Amendment is attached and incorporated into this Complaint as **Exhibit C**.

27.     On or around August 6, 2018, LF and C4C entered into a Third Amendment of the Agreement, increasing the advanced amount to $3,700,000.  A true and correct copy of the Third Amendment is attached and incorporated into this Complaint as **Exhibit D**.

28.     On or around October 22, 2018, LF and C4C entered into a Fourth Amendment of

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**COMPLAINT**

BN 38656884v7

1    the Agreement, increasing the advanced amount to $4,000,000.  A true and correct copy of the

2    Fourth Amendment is attached and incorporated into this Complaint as **Exhibit E**.

3        29.    On or around March 17, 2019, LF and C4C entered into a Fifth Amendment of the

4    Agreement, increasing the advanced amount to $4,500,000.  A true and correct copy of the Fifth

5    Amendment is attached and incorporated into this Complaint as **Exhibit F**.

6        30.    On or around May 17, 2019, LF and C4C entered into a Sixth Amendment of the

7    Agreement, increasing the advanced amount to $5,000,000.  A true and correct copy of the Sixth

8    Amendment is attached and incorporated into this Complaint as **Exhibit G**.

9        31.    On or around July 17, 2019, LF and C4C entered into a Seventh Amendment of

10   the Agreement.  A true and correct copy of the Seventh Amendment is attached and incorporated

11   into this Complaint as **Exhibit H**.

12       32.    The First through Seventh Amendments are herein referenced as the

13   "Amendments."

14       33.    Under the Agreement (and related Amendments), including without limitation:

15           a.    LF has advanced to C4C $5,000,000 (the "Advance");

16           b.    C4C agreed to pay to LF an adjustable interest rate of ***no less*** than 16.25%

17                 on the Advance (as calculated under the terms of the Agreement), and on

18                 any other payments from LF to C4C pursuant to the Agreement (the

19                 current interest rate on the unpaid balance is 18.5%);

20           c.    C4C agreed to pay certain fees and expenses to LF;

21           d.    C4C's "Obligations" are "[a]ll present and future obligations owing by

22                 [C4C] to [LF] whether arising hereunder or otherwise, and whether arising

23                 before, during or after the commencement of any bankruptcy case in which

24                 [C4C] is a debtor[;]"

25           e.    LF's Obligations to C4C are secured by a lien on C4C's portfolio of Cases

26                 ("Case Portfolio");

27           f.    Under section 2.2, the Obligations are due upon LF's demand;

28           g.    Under section 7.1.1, after an Event of Default or upon LF's written request,

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

1    C4C "shall cause all payments on account of Claim Purchase Agreements

2    to be paid directly to LF…";

3    h.    Under sections 11.10, C4C is required to provide written notice

4          immediately upon learning of any material change in J. Birnbaum's

5          financial condition;

6    i.    Under sections 11.7 and 16.1.1, C4C agreed to pay all reasonable

7          attorneys' fees and costs incurred by LF as a result of LF having to enforce

8          the Agreement and C4C's failure to comply with the Agreement;

9    j.    The following events are each defined as an "Event of Default" under the

10         Agreement:

11         1.    C4C "defaults in the payment of any Obligations when due…" (Sect.

12               13.1);

13         2.    C4C "is in default with respect to any present or future agreement

14               with [LF]" (Sect. 13.3);

15         3.    "A material adverse change…occurs in the financial condition of the

16               Guarantor" (Sect. 13.5);

17         4.    C4C or J. Birnbaum "fail[] to pay any indebtedness for borrowed

18               funds when due...or fails to perform or observe any term, covenant,

19               or condition of any agreement…"(Sect. 13.8);

20         5.    C4C or J. Birnbaum "consents to the appointment of a custodian,

21               receiver, trustee, or similar officer for it or for all or any substantial

22               part of its assets…." (Sect. 13.9); and

23         6.    An adverse change occurs with respect to the financial condition or

24               operations of [C4C or J. Birnbaum] which results in a material

25               impairment of the prospect of repayment of the Obligations (Sect.

26               13.11).

27    k.    Upon an Event of Default, LF "may declare all Obligations to be

28          immediately due and payable without presentment, demand, protest, or

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

1   notice of any kind….” (Sect. 14.1.2);

2   l.   Also upon an Event of Default, LF “[e]ngage a consulting, turnaround or

3   similar firm to: (a) conduct an operational assessment of Borrower, and/or

4   (b) take day-to-day operational and administrative control of the business

5   of [C4C]” (Sect. 14.1.9);

6   m.   Under section 24.5, the LF and C4C agreed that California law governed

7   the Agreement and its enforcement; and

8   n.   Under section 25.5, C4C consented to the jurisdiction of this Court, agreed

9   that venue is proper in this Court for any disputes arising from the

10   Agreement, and waived any right to challenge jurisdiction or venue.

11   34.   In section 2.3.1, C4C was required to “provide to [LF] a Borrowing Base

12   Certificate and an Affidavit in the form of Exhibit 2.3.1, completed and signed.”  On January 22,

13   2018, J. Birnbaum executed such an Affidavit attesting to the Schedule of Claims (or Case

14   Portfolio) (“Case Portfolio Affidavit”) and acknowledged that the accuracy of the Schedule and

15   the Declaration would be “materially relied upon” by LF.  A true and correct copy of the Case

16   Portfolio Affidavit is attached and incorporated into this Complaint as **Exhibit I**.  Between

17   January 2018 and October 2019, C4C, through J. Birnbaum, sent over the required Borrowing

18   Base Certificates to support increases in C4C’s loan advance amounts under the Agreement and

19   subsequent Amendments.

20   35.   J. Birnbaum also executed an Affidavit of the Statement of Assets (“Assets

21   Affidavit”), wherein he attested that the Statement of Assets “is true and correct in all respects”

22   and that the “accuracy of the Statement of Assets and this Declaration will be materially relied

23   upon by [LF] in execution of [the Agreement] with [C4C].”  A true and correct copy of the Assets

24   Affidavit is attached and incorporated into this Complaint as **Exhibit J**.

25   36.   LF perfected its security interest in C4C by filing a UCC Financing Statement with

26   the New Jersey Secretary of State covering all of the “present and future assets of [C4C].”  A true

27   and correct copy of this UCC Financing Statement is attached and incorporated into this Complaint

28   as **Exhibit K**.

37.     The Obligations remain due and owing to LF.

**B.     J. Birnbaum Guaranty**

38.     On or about January 22, 2018, and in connection with the Agreement, J. Birnbaum executed a Guaranty for LF's benefit ("J. Birnbaum Guaranty").  A true and correct copy of the J. Birnbaum Guaranty is attached and incorporated into this Complaint as **Exhibit L**.

39.     Under the J. Birnbaum Guaranty, including without limitation, J. Birnbaum:

     a.     Guaranteed all present and future obligations of C4C to LF, and prompt payment and performance of C4C's Obligations;

     b.     Waived all suretyship defenses;

     c.     Agreed that the Guaranty is a continuing guaranty;

     d.     Waived any right to revoke the Guaranty;

     e.     Agreed to pay all reasonable attorneys' fees and costs incurred by LF as a result of LF having to enforce the Guaranty;

     f.     Agreed that California law governed the Guaranty and its enforcement; and

     g.     Consented to the jurisdiction of this Court, agreed that venue is proper in this Court for any disputes arising from the Guaranty, and waived any right to challenge jurisdiction or venue.

40.     The J. Birnbaum Guaranty has not been terminated.

**C.     K. Birnbaum Guaranty**

41.     On or about May 8, 2009, K. Birnbaum executed a Guaranty for LF's benefit ("K. Birnbaum Guaranty").  A true and correct copy of the K. Birnbaum Guaranty is attached and incorporated into this Complaint as **Exhibit M**.

42.     Under the K. Birnbaum Guaranty, including without limitation, K. Birnbaum:

     a.     Guaranteed all present and future obligations of C4C to LF, and prompt payment and performance of C4C's Obligations;

     b.     Waived all suretyship defenses;

     c.     Agreed that the Guaranty is a continuing guaranty;

     d.     Waived any right to revoke the Guaranty;

e.      Agreed to pay all reasonable attorneys' fees and costs incurred by LF as a result of LF having to enforce the Guaranty;

f.      Agreed that California law governed the Guaranty and its enforcement; and

g.      Consented to the jurisdiction of this Court, agreed that venue is proper in this Court for any disputes arising from the Guaranty, and waived any right to challenge jurisdiction or venue.

43.     The K. Birnbaum Guaranty has not been terminated.

**D.     Discovery of C4C's Fraud**

44.     On October 17, 2019, J. Birnbaum sent a Borrowing Base Certificate to LF, certifying that C4C had over $23,000,000 in estimated value for open cases in its portfolio, and over $14,289,619 in eligible net accounts receivables.  J. Birnbaum attested to the accuracy of the Borrowing Base Certificate via declaration.  A true and correct copy of the October 17, 2019 Borrowing Base Certificate is attached and incorporated into this Complaint as **Exhibit N**.

45.     LF required C4C to make payments on the first day of the month for the prior month's interest.  C4C failed to make its November 1, 2019 payment for the October 2019 interest.

46.     In or about the middle of November 2019, LF's principal received a call from a principal of BCP Special Opportunities Fund Holdings, LP and BP Partners Advisors LLP (collectively, "BCP").

47.     On information and belief, BCP has a loan arrangement with another entity that J. Birnbaum controls, Liberty Bridge Finco LLC (and related entities) ("LB").  C4C transferred certain Cases to LB and, on information and belief, LB then sold or pledged the Cases to BCP.

48.     BCP's principal informed LF's principal that BCP discovered that a meaningful portion of its collateral (i.e., the Cases acquired by LB from C4C) were not real.  BCP then launched an investigation and discovered that the fraud was pervasive throughout C4C and LB.  BCP's principal told LF's principal that there may be as much as $20 million that is unaccounted for in C4C's operation.

49.     On information and belief, BCP's principal and others at BCP confronted J. Birnbaum who admitted that C4C and LB are fraudulent enterprises.  Further, on information and

belief, J. Birnbaum transferred hundreds of thousands of dollars from C4C to or for the benefit of himself and an as yet to be named female individual ("Jane Doe") and has purchased real estate with some of the foregoing funds.

50.     On or about November 14, 2019, LF's principal received an email from a criminal defense attorney Alan Sibler.  C4C, LB, Liberty and J. Birnbaum have retained Mr. Sibler, his firm Pashman Stein Walder Hayden, and another criminal defense attorney, Michael Perle.

51.     On November 21, 2019, Mr. Sibler and Mr. Perle held a telephone conference with LF and other "interested parties," including BCP.  During the call, Mr. Sibler and Mr. Perle confirmed that J. Birnbaum kept secret notations on C4C's books and records to indicate which Cases in C4C's Case Portfolio were real, fake, or pledged more than once to more than one loan participant.

52.     Based on information provided by C4C and J. Birnbaum's counsel and individuals at BCP, LF alleges that C4C and J. Birnbaum: (1) utilized illegal bookkeeping as to open versus closed cases for C4C's Case Portfolio, (2) double-pledged assets in C4C's Case Portfolio (wherein the same case was sold or pledged multiple times to different parties), and (3) transferred cases within the Case Portfolio between entities LB and C4C, without LF's permission.

53.     On December 1, 2019, C4C failed to pay the November 2019 monthly interest payment.

54.     On December 4, 2019, Mr. Sibler sent an email to LF's principal (among others), which stated that C4C and LB "are engaging Brian Ryniker of Ryniker Consultants, LLC to serve as [Chief Restructuring Officer]" and that Mr. Ryniker "will effectively assume the role of chief executive officer of [C4C and LB] and exercise the duties and authority associated with that role."

55.     LF demanded C4C and J. Birnbaum repay the Obligations, which they have failed to do.

56.     C4C's consent to Mr. Ryniker's appointment constitutes an Event of Default pursuant to section 13.9.

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

57.     C4C is currently in default under the Agreement based on its failure to repay the past due obligations and its consent to the appointment of Mr. Ryniker is only the latest of its multiple Events of Default.

58.     C4C's and J. Birnbaum's counsel, as agents of C4C and J. Birnbaum, and their appointed Chief Restructuring Officer Mr. Ryniker, currently remain in control of LF's collateral, and, upon information and belief, are collecting and spending the proceeds of the collateral and Cases, rather than paying such proceeds to LF.

## FIRST CLAIM

### Breach of Written Contract (The Agreement and Amendments)

### (Against Defendant C4C)

59.     LF incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth in this claim.

60.     C4C executed and delivered the Agreement (and Amendments) to LF.  C4C has breached the Agreement and Amendments by, including without limitation:

        a.     making or furnishing to LF false and/or misleading representations, warranties, statements and documents;

        b.     failing to act in good faith and fairly with LF;

        c.     upon information and belief, J. Birnbaum used loan amounts for prohibited business purposes, including without limitation, making payments for, or on behalf of J. Birnbaum;

        d.     failing to make the monthly interest payments;

        e.     failing to notify LF of material changes in the financial conditions of C4C and J. Birnbaum;

        f.     appointing a Chief Restructuring Officer;

        g.     failing to repay to LF the Obligations; and

        h.     acting, or failing to act in violation of the Agreement as may be discovered.

61.     LF has performed all conditions, covenants and promises required of it under the Agreement and Amendments except those which may be excused as a matter of law.

62. C4C is currently in default under the Agreement and Amendments and, thus, all outstanding Obligations, which presently exceed $5,000,000, plus accrued interest are past due. Despite this, C4C has failed to repay LF.

63. As a direct and proximate result of the breach of the Agreement and Amendments, LF has suffered, and continues to suffer, damages which exceed $5,000,000, plus outstanding monthly interest payments, 18.5% per annum interest, attorney's fees, and costs. The full nature and extent of these damages are presently unknown and will be proven at trial. LF also seeks prejudgment remedies, including a right to attach order and any other injunctive relief as deemed appropriate, including but not limited to, an order that C4C allow LF engage a consulting, turnaround or similar firm to "(a) conduct an operational assessment of Borrower, and/or (b) take day-to-day operational and administrative control of the business of [C4C]" pursuant to Section 14.1.9 of the Agreement.

## SECOND CLAIM

### Breach of Written Guaranty (J. Birnbaum Guaranty)

### (Against Defendant J. Birnbaum)

64. LF incorporates by reference paragraphs 1 through 63 of this Complaint as though fully set forth in this claim.

65. Under the J. Birnbaum Guaranty, J. Birnbaum personally guaranteed all of C4C's present and future Obligations to LF.

66. J. Birnbaum waived any right to revoke the J. Birnbaum Guaranty and the J. Birnbaum Guaranty has not been terminated.

67. J. Birnbaum breached the J. Birnbaum Guaranty by failing to promptly pay C4C's Obligations owed to LF.

68. LF has performed all conditions, covenants and promises required of it under the J. Birnbaum Guaranty except those which may be excused as a matter of law.

69. As a direct and proximate result of J. Birnbaum's breach of the J. Birnbaum Guaranty, LF has been damaged in the amount of at least $5,000,000, plus past due interest payments, 18.5% per annum interest, to be determined according to proof. LF also seeks

attorney's fees, and costs, and prejudgment remedies, including a right to attach order and any other injunctive relief as deemed appropriate.

### THIRD CLAIM

**Breach of Written Guaranty (K. Birnbaum Guaranty)**

**(Against Defendant K. Birnbaum)**

70. LF incorporates by reference paragraphs 1 through 69 of this Complaint as though fully set forth in this claim.

71. Under the K. Birnbaum Guaranty, K. Birnbaum personally guaranteed all of C4C's present and future Obligations to LF.

72. K. Birnbaum waived any right to revoke the K. Birnbaum Guaranty and the K. Birnbaum Guaranty has not been terminated.

73. K. Birnbaum breached the K. Birnbaum Guaranty by failing to promptly pay C4C's Obligations owed to LF.

74. LF has performed all conditions, covenants and promises required of it under the K. Birnbaum Guaranty except those that may be excused as a matter of law.

75. As a direct and proximate result of K. Birnbaum's breach of the K. Birnbaum Guaranty, LF has been damaged in the amount of at least $5,000,000, plus past due interest payments, 18.5% annum interest, attorney's fees, and costs to be determined according to proof. LF also seeks prejudgment remedies, including a right to attach order and any other injunctive relief as deemed appropriate.

### FOURTH CLAIM

**Fraud in the Inducement**

**(Against Defendants J. Birnbaum and C4C)**

76. LF incorporates by reference paragraphs 1 through 75 of this Complaint as though fully set forth in this claim.

77. Prior to LF issuing the loans to C4C, J. Birnbaum and C4C, through J. Birnbaum, provided reports and documents, including the Case Portfolio Affidavit, Borrowing Base Certificates (with supporting documentation of open cases and closed cases), and Assets

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

1   Affidavit, which were ongoing representations of the Case Portfolio and J. Birnbaum's assets.

2          78.    LF is informed and believes and thereon alleges that J. Birnbaum and C4C, and

3   each of them, knew that the actual Case Portfolio should have been valued at millions of dollars

4   less than the amounts being reported to LF, that the representations they were making regarding

5   the Case Portfolio were patently false, and that the reports they were submitting to LF were

6   fraudulent documents.

7          79.    One example of this is that cases in the Case Portfolio, upon information and

8   belief, were double-pledged to other entities.

9          80.    LF is informed and believes and thereon alleges that J. Birnbaum also

10  misrepresented his statements of assets.

11         81.    LF is informed and believes and thereon alleges that C4C and J. Birnbaum, and

12  each of them, made the representations described above for the specific purpose of inducing LF to

13  loan C4C money.

14         82.    LF reasonably relied on the representations of J. Birnbaum and C4C, and each of

15  them, and would not have approved the loan if it knew of the discrepancies in the Case Portfolio,

16  the Borrowing Base Certificates or the Assets Affidavit.

17         83.    LF has been injured in the amount of LF's unpaid balance for the Loan for an

18  outstanding amount due of $5,000,000, plus past due interest payments and 18.5% annum

19  interest.

20         84.    Upon information and belief, J. Birnbaum and C4C, and each of them, acted

21  willfully, maliciously, oppressively, and with full knowledge of the adverse effect of their actions

22  on LF, and with willful and deliberate disregard of the consequences to LF.  As a direct result of

23  the fraudulent, willful and malicious conduct by J. Birnbaum and C4C, and each of them, LF is

24  entitled to exemplary and punitive damages against each of them in an amount to be determined

25  as appropriate by the trier of fact.

26  ///

27  ///

28  ///

## **FIFTH CLAIM**

### **Intentional Misrepresentation/Fraudulent Misrepresentation**

### **(Against Defendants J. Birnbaum and C4C)**

85.     LF incorporates by reference paragraphs 1 through 84 of this Complaint as though fully set forth in this claim.

86.     J. Birnbaum and C4C, and each of them, made various fraudulent and intentional misrepresentations of fact.

87.     Upon information and belief, LF alleges that at some point during the time period of January 2018 through October 2019, J. Birnbaum and C4C, and each of them, falsely represented C4C's Case Portfolio to LF by grossly overstating the amounts in the Case Portfolio and the Borrowing Base Certificates.  These statements were materially false in regards to J. Birnbaum's and C4C's financial conditions:

        a.     C4C falsely reported its Case Portfolio when, in fact, LF alleges upon information and belief that the Case Portfolio was worth much less than that amount;

        b.     C4C and J. Birnbaum delivered to LF reports, including Borrowing Base Certificates, purportedly showing C4C's Case Portfolio; and

        c.     J. Birnbaum personally attested and guaranteed the veracity of the Case Portfolio in the Case Portfolio Affidavit.

88.     Upon information and belief, LF alleges that J. Birnbaum and C4C, and each of their oral and written representations enumerated above were false because, among other things:

        a.     J. Birnbaum and C4C, and each of them, fabricated and falsified statements for C4C to misleadingly reflect that C4C had millions of dollars more than it actually did in its Case Portfolio; and

        b.     Upon information and belief, certain proceeds of LF's monies and credit to C4C were used for J. Birnbaum's personal expenses.

89.     The true facts, of which LF was unaware, were that, upon information and belief, C4C did not have the stated amounts in the Case Portfolio and Borrowing Base Certificates.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

90.     Upon information and belief, C4C, through J. Birnbaum, made the aforementioned misrepresentations, knowing they were false, and made solely to induce reliance upon them by LF.

91.     Upon information and belief, C4C, through J. Birnbaum, made the misrepresentations as enumerated above with the intent to deceive LF and to induce LF to loan C4C additional amounts throughout 2018 and in 2019 as identified in the various Amendments.

92.     LF justifiably, reasonably, and detrimentally relied upon the oral and written representations made by J. Birnbaum and C4C, to loan $5,000,000 to C4C.

93.     Had LF known that the oral and written representations made by C4C were false and misleading, LF would not have loaned $5,000,000 to C4C.

94.     C4C and J. Birnbaum have not repaid the outstanding balance of $5,000,000, outstanding monthly interest payments, attorneys' fees and costs, and other charges owed.  C4C and J. Birnbaum continue to fail to pay LF that amount.

95.     As a direct and proximate cause of C4C and J. Birnbaum's, and each of their false representations, LF suffered, and continues to suffer, damages totaling at least $5,000,000, plus past due interest payments, 18.5% per annum interest, attorneys' fees and costs.  The full nature and extent of these damages, and of C4C's and J. Birnbaum's fraudulent acts, are presently unknown.

96.     Upon information and belief, C4C and J. Birnbaum, and each of them, acted willfully, maliciously, oppressively and with full knowledge of the adverse effect of their actions on LF, and with willful and deliberate disregard of the consequences to LF.  As a direct result of the fraudulent, willful and malicious conduct of C4C and J. Birnbaum, and of each of them, LF is entitled to exemplary and punitive damages against them in an amount to be determined as appropriate by the trier of fact.

///
///
///
///

## SIXTH CLAIM

### Negligent Misrepresentation

### (Against Defendants J. Birnbaum and C4C)

97.    LF incorporates by reference paragraphs 1 through 96 of this Complaint as though fully set forth in this claim.

98.    As detailed above, C4C and J. Birnbaum affirmatively represented to LF C4C's and J. Birnbaum's assets.

99.    C4C and J. Birnbaum made these material representations to induce LF to loan C4C further amounts.

100.    Upon information and belief, C4C and J. Birnbaum had no reasonable grounds for asserting that the representations made to LF were true at the time they were made because the Case Portfolio was misrepresented and the amounts being reported on the Borrowing Base Certificates were in fact millions of dollars less than the amounts being reported to LF.

101.    Moreover, upon information and belief, J. Birnbaum's assets were much less than he attested to LF.

102.    Upon information and belief, C4C and J. Birnbaum made these representations without performing an adequate investigation to confirm the truth or falsity of those matters.

103.    C4C and J. Birnbaum intended to induce LF's reliance on their representations, and LF would rely upon their representations in their evaluations to loan further funds to C4C.

104.    LF justifiably and reasonably relied upon C4C and J. Birnbaum's representations because LF had worked with C4C profitably and effectively in the past.

105.    As a direct and proximate cause of the negligent representations by C4C and J. Birnbaum, LF suffered, and continues to suffer, damages in excess of $5,000,000, plus past due interest payments, 18.5% per annum interest, and costs.  The full nature and extent of these damages will be proven at trial.

///

///

///

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

## SEVENTH CLAIM

### Conspiracy to Defraud

### (Against Defendants J. Birnbaum and C4C)

106.    LF incorporates by reference paragraphs 1 through 105 of this Complaint as though fully set forth in this claim.

107.    Upon information and belief, J. Birnbaum and C4C, and each of them, engaged in a conspiracy to defraud LF as described above, and J. Birnbaum and C4C reached implicit or explicit agreements with each other to aid in defrauding LF.  In furtherance of their agreements, J. Birnbaum and C4C committed the fraud described herein.

108.    As a direct and proximate result of the fraudulent representations of J. Birnbaum and C4C, LF suffered, and continues to suffer, damages totaling at least $5,000,000, plus past due interest payments, 18.5% per annum interest and costs.  The full nature and extent of these damages, and of their fraudulent acts, are presently unknown.

109.    Upon information and belief, J. Birnbaum and C4C acted willfully, maliciously, oppressively and with full knowledge of the adverse effect of their actions on LF, and with willful and deliberate disregard of the consequences to LF.  As a direct result of the fraudulent, willful and malicious conduct of J. Birnbaum and C4C, LF is entitled to exemplary and punitive damages against them in an amount to be determined as appropriate by the trier of fact.

## EIGHTH CLAIM

### Money Had and Received

### (Against Defendant C4C)

110.    LF incorporates by reference paragraphs 1 through 109 of this Complaint as though fully set forth in this claim.

111.    During the period of January 2018 to September 2019, C4C became indebted to LF in an amount in excess of $5,000,000 for money had and received by it from LF.

112.    The whole of the above sum has not been repaid.

113.    There is now due, owing and unpaid from C4C to LF the sum of not less than $5,000,000 together with interest and attorneys' fees and costs as may be provided by law.

## NINTH CLAIM

### Open Book Account

### (Against Defendant C4C)

114.    LF incorporates by reference paragraphs 1 through 113 of this Complaint as though fully set forth in this claim.

115.    From January 2018 to September 2019, C4C became indebted to LF on an open book account for money due in a sum in excess of $5,000,000 for money lent to C4C at its request.

116.    The whole of the above sum has not been paid.

117.    There is now due, owing and unpaid from C4C to LF the sum of not less than $5,000,000 with interest, attorneys' fees and costs as may be provided by law.

## TENTH CLAIM

### Account Stated

### (Against Defendant C4C)

118.    LF incorporates by reference paragraphs 1 through 117 of this Complaint as though fully set forth in this claim.

119.    An account was stated by and between LF and C4C in which it was agreed and understood that C4C was indebted to LF in a sum in excess of $5,000,000.

120.    The whole of the above sum has not been paid.

121.    There is now due, owing and unpaid from C4C to LF the sum of not less than $5,000,000, plus past due interest payments, together with 18.5% interest, attorneys' fees and costs as may be provided by law.

## ELEVENTH CLAIM

### Conversion

### (Against Defendant C4C)

122.    LF incorporates by reference paragraphs 1 through 121 as though fully set forth in this claim.

123.    At some point between January 2018 and November 1, 2019, upon information

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

**COMPLAINT**

and belief, C4C took the specific sum of $5,000,000 from LF's possession and converted the same to C4C's and its President's own use.

124.    LF has demanded the immediate return of the outstanding specific sums of monies but C4C has failed to repay such sums converted, and continues to fail to return the specific sums of monies to LF.

125.    Between the time of C4C's and J. Birnbaum's conversion of the specific sums of monies for their own use, and the filing of this action, LF has expended time in the pursuit of the converted property which is recoverable in an amount according to proof.

126.    LF has been informed, and thereupon believes and alleges, that J. Birnbaum's and C4C's, and each of their acts alleged above were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

## TWELFTH CLAIM

### Constructive Fraudulent Transfer (N.J.S.A. §§ 25:2-25, 25:2-27)

### (Against Defendants J. Birnbaum, Liberty and C4C)

127.    LF incorporates by reference paragraphs 1 through 126 as though fully set forth in this claim.

128.    To the extent New Jersey law is held to apply to this claim pursuant to Cal. Civ. Code section 3439.10, it has adopted the Uniform Fraudulent Transfer Act, which is codified at New Jersey Statutes Annotated sections 25.2-20-25:2-34.

129.    C4C's indebtedness created by the Agreement qualifies it as a debtor.

130.    J. Birnbaum's indebtedness created by the Agreement and the J. Birnbaum Guaranty qualifies him as a debtor.

131.    LF has a claim as a current creditor against C4C, and C4C may not convey or otherwise dispose of such property in an effort, or with the effect, to deprive LF of its legitimate right to recover such assets as may satisfy the obligation due and owing to LF.

132.    LF has a claim as a current creditor against J. Birnbaum, and J. Birnbaum may not convey or otherwise dispose of such property in an effort, or with the effect, to deprive LF of its

legitimate right to recover such assets as may satisfy the obligation due and owing to LF.

133.    LF is informed and believes, and thereon alleges, that C4C engaged in a fraudulent conveyance by transferring C4C's assets to J. Birnbaum with the intent to prevent LF from being able to access such money to satisfy its claims against C4C.

134.    LF is informed and believes, and thereon alleges, that C4C engaged in a fraudulent conveyance by transferring C4C's assets to Liberty with the intent to prevent LF from being able to access such money to satisfy its claims against C4C.

135.    LF is informed and believes, and thereon alleges, that J. Birnbaum engaged in a fraudulent conveyance by transferring C4C's assets and his assets to Liberty, and other as yet to be identified entities, and to each of them, with the intent to prevent LF from being able to access such money to satisfy its claims against C4C.

136.    As set forth above, C4C owes LF over $5,000,000 plus past due interest payments which sum is due and owing and, upon information and belief, LF's right to payment from C4C occurred prior to the payments (transfers) to J. Birnbaum or Liberty, and each of them, as alleged herein.

137.    As set forth above, J. Birnbaum owes LF over $5,000,000 which sum is due and owing and, upon information and belief, LF's right to payment from J. Birnbaum occurred prior to the payments (transfers) to Liberty as alleged herein.

138.    Upon information and belief, C4C, and thereby J. Birnbaum, made payments (transfers) to J. Birnbaum,  Liberty, and each of them, when C4C was insolvent, as the total amount of C4C's debts was greater than the total amount of C4C's assets when such payments were made, or the transfers themselves made C4C insolvent.

139.    Upon information and belief, J. Birnbaum made payments (transfers) to Liberty when C4C was insolvent, as the total amount of C4C's debts was greater than the total amount of C4C's assets when such payments were made, or the transfers themselves made C4C insolvent.

140.    C4C failed to receive reasonable equivalent value in exchange for payments to J. Birnbaum and the payments to J. Birnbaum are the cause of substantial harm to LF.

141.    C4C failed to receive reasonable equivalent value in exchange for payments to

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

**COMPLAINT**

Liberty and the payments to Liberty are the cause of substantial harm to LF.

142.    J. Birnbaum failed to receive reasonable equivalent value in exchange for payments to Liberty and the payments to Liberty are the cause of substantial harm to LF.

143.    C4C's fraudulent transfers entitle LF to attach the assets transferred or the proceeds provided to J. Birnbaum and Liberty.

## THIRTEENTH CLAIM

### Fraudulent Transfer (N.J.S.A. §§ 25:2-25, 25:2-27)

### (Against Defendants J. Birnbaum, Liberty and C4C)

144.    LF incorporates by reference paragraphs 1 through 143 as though fully set forth in this claim.

145.    To the extent New Jersey law is held to apply to this claim pursuant to Cal. Civ. Code section 3439.10, it has adopted the Uniform Fraudulent Conveyance Act, which is codified at New Jersey Statutes Annotated sections 25.2-20-25:2-34.

146.    LF has a claim as a creditor against J. Birnbaum's assets as he is a guarantor of the amounts owed to LF by C4C as set forth above and is also the alter ego of C4C.

147.    LF has a claim as a creditor against C4C's assets as set forth above.

148.    J. Birnbaum may not convey or otherwise dispose of his property in an effort, or with the effect, to deprive LF of its legitimate right to recover such assets as may satisfy the obligation due and owing to LF.

149.    C4C may not convey or otherwise dispose of its property in an effort, or with the effect, to deprive LF of its legitimate right to recover such assets as may satisfy the obligation due and owing to LF.

150.    C4C has engaged in a fraudulent scheme to convey or otherwise dispose of its assets by transferring it to a new corporate entity, Liberty, to J. Birnbaum, and each of them, in an effort to avoid LF's right to recover monies owed to it by C4C for its illegal and fraudulent actions as set forth in this Complaint.

151.    J. Birnbaum has engaged in a fraudulent scheme to convey or otherwise dispose of his assets by transferring his assets to a new corporate entity, Liberty, as well as potentially to

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

other as yet unknown entities, and each of them, in an effort to avoid LF's right to recover monies owed to it by J. Birnbaum for his illegal and fraudulent actions as set forth in this Complaint.

152.    Each of these transfers were undertaken by C4C with the intent to hinder, delay and defraud LF of its right to collect the monies owed to it.

153.    These transfers were undertaken by J. Birnbaum with the intent to hinder, delay and defraud LF of its right to collect the monies owed to it.

154.    As set forth above, C4C and J. Birnbaum owe LF over $5,000,000, which sum is due and owing, and LF's right to payment from C4C and J. Birnbaum occurred prior to the transfer of the assets that such sums owed to LF were beyond C4C's and J. Birnbaum's and each of their ability to pay LF.  Additionally, the transfers were without any consideration.

155.    Alternatively, upon information and belief, C4C and J. Birnbaum made the transfers of their assets when C4C and J. Birnbaum, and each of them, were insolvent, as the total amount of C4C's debts and J. Birnbaum's debts were greater than the total amount of C4C's and J. Birnbaum's assets when such transfers were made, or said transfers made C4C and J. Birnbaum, and each of them insolvent.

156.    C4C failed to receive reasonable equivalent value in exchange for the transfers of the assets and such transfers are the cause of substantial harm to LF.

157.    J. Birnbaum failed to receive reasonable equivalent value in exchange for the transfers of the assets and such transfers are the cause of substantial harm to LF.

158.    C4C's fraudulent transfers entitle LF to seek recovery of the assets from J. Birnbaum and Liberty.

159.    J. Birnbaum's fraudulent transfers entitle LF to seek recovery of the assets from Liberty.

## FOURTEENTH CLAIM

### Appointment of Receiver

### (Against Defendants J. Birnbaum and C4C)

160.    LF incorporates by reference paragraphs 1 through 159 as though fully set forth in this claim.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

161.    As part of their scheme to defraud LF, upon information and belief, LF alleges that C4C and J. Birnbaum manipulated financial statements and fraudulently transferred assets.

162.    Upon information and belief, LF alleges that at the present time, C4C's and J. Birnbaum's attorneys, as agents of C4C and J. Birnbaum, control LF's collateral, and, through a third party are collecting and spending the proceeds of the collateral, rather than paying such proceeds to LF, which is causing LF *irreparable* harm.

163.    It is critical that a receiver be appointed at this time with all the usual and customary powers of a receiver, including, but not limited to, safeguarding the assets of C4C and J. Birnbaum.  LF is entitled to have a receiver appointed to take possession and control of the estate of J. Birnbaum as well as of C4C, to protect and preserve their assets, and manage and sell the assets, if necessary, and to apply any proceeds and assets to the payment of the indebtedness to LF.

164.    Under Federal Rule of Civil Procedure 66 and the Court's equitable powers, the Court has the ability to craft an equitable remedy to meet the needs of the case and do justice.

165.    The appointment of a temporary receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of J. Birnbaum and C4C.

166.    By reason of the foregoing, LF respectfully requests that this Court proceed to issue an order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

167.    Pursuant to section 7.1.1 of the Agreement, LF requests that the Court issue an order causing all payments on account of "Claim Purchase Agreements" as defined in the Agreement to be paid directly to LF.

///

///

///

///

///

1

**PRAYER FOR RELIEF**

2        **WHEREFORE**, LF prays for judgment against all Defendants in this action, jointly and

3  severally, as follows:

4

**AS TO THE FIRST CLAIM:**

5

**(Breach of Written Contract (Against Defendant C4C))**

6        1.        For compensatory damages in the sum of $5,000,000, or an amount according to

7  proof, plus past due monthly interest, together with interest thereon of 18.5%;

8        2.        For prejudgment interest which continues to accrue; and

9        3.        For prejudgment remedies including a right to attach order and any other

10  injunctive relief as deemed appropriate.

11

**AS TO THE SECOND CLAIM:**

12

**(Breach of Written Guaranty (J. Birnbaum Guaranty) Against Defendant J. Birnbaum)**

13        1.        For compensatory damages in the sum of $5,000,000 or an amount according to

14  proof, plus past due monthly interest, together with interest thereon at 18.5% per annum;

15        2.        For prejudgment interest which continues to accrue; and

16        3.        For prejudgment remedies including a right to attach order and any other

17  injunctive relief as deemed appropriate.

18

**AS TO THE THIRD CLAIM:**

19

**(Breach of Written Guaranty (K. Birnbaum Guaranty) Against Defendant K. Birnbaum)**

20        1.        For compensatory damages in the sum of $5,000,000 or an amount according to

21  proof, plus past due monthly interest, together with interest thereon at 18.5% per annum;

22        2.        For prejudgment interest which continues to accrue; and

23        3.        For prejudgment remedies including a right to attach order and any other

24  injunctive relief as deemed appropriate.

25

**AS TO THE FOURTH AND FIFTH CLAIMS:**

26

**(Fraud in the Inducement and Intentional Misrepresentation/Fraudulent Misrepresentation**

27

**Against Defendants J. Birnbaum and C4C)**

28        1.        For compensatory damages in the sum of $5,000,000, plus past due monthly

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

interest, or an amount according to proof, together with interest thereon at 18.5% per annum;

2.    For exemplary and punitive damages in an amount according to proof at the time of trial; and

3.    For prejudgment interest which continues to accrue.

4.    An order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

### AS TO THE SIXTH CLAIM:

**(Negligent Misrepresentation Against Defendants J. Birnbaum and C4C)**

1.    For compensatory damages in the sum of $5,000,000, plus past due monthly interest, or an amount according to proof, together with interest thereon at 18.5% per annum;

### AS TO THE SEVENTH CLAIM:

**(Conspiracy to Defraud Against J. Birnbaum and C4C)**

1.    For compensatory damages in the sum of $5,000,000, plus past due monthly interest, or an amount according to proof, together with interest thereon at 18.5% per annum;

2.    For exemplary and punitive damages in an amount according to proof at the time of trial; and

3.    For a temporary restraining order, preliminary injunction and/or permanent injunction enjoining C4C and J. Birnbaum and their agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with them, and all entities controlled by them, from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of their real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

4.    An order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

**AS TO THE EIGHTH CLAIM:**

**(Money Had and Received Against Defendant C4C)**

1.      For compensatory damages in the sum of $5,000,000, plus past due monthly interest, or an amount according to proof, together with interest thereon at 18.5% per annum;

2.      For fees, including late fees, which continue to accrue.

**AS TO THE NINTH CLAIM:**

**(Open Book Account Against Defendant C4C)**

1.      For compensatory damages in the sum of $5,000,000 plus past due monthly interest, or an amount according to proof, together with interest thereon at 18.5% per annum; and

2.      For fees, including late fees, which continue to accrue.

**AS TO THE TENTH CLAIM:**

**(Account Stated Against Defendant C4C)**

1.      For compensatory damages in the sum of $5,000,000 plus past due monthly interest, or an amount according to proof, together with interest thereon at 18.5% per annum; and

2.      For fees, including late fees, which continue to accrue.

**AS TO THE ELEVENTH CLAIM:**

**(Conversion Against Defendant C4C)**

1.      For the value of the precise sum converted in the amount of $5,000,000;

2.      For damages for the proximate and foreseeable loss resulting from Defendants' conversion in an amount according to proof;

3.      For damages for the time and money properly expended in pursuit of the converted property in an amount according to proof; and

4.      For exemplary and punitive damages in an amount according to proof at the time of trial.

///

///

///

///

**<u>AS TO THE TWELFTH CLAIM:</u>**

**(Constructive Fraudulent Transfer Against Defendants J. Birnbaum, Liberty and C4C)**

1.      For return of the assets and monies fraudulently transferred to J. Birnbaum and Liberty.

2.      For injunctive relief enjoining further disposition by C4C or J. Birnbaum of any monies to J. Birnbaum, Liberty or any other person or entity.

3.      For appointment of a receiver to ensure no further disposition by J. Birnbaum or C4C.

4.      For a temporary restraining order, preliminary injunction and/or permanent injunction enjoining C4C and J. Birnbaum and their agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with them, and all entities controlled by them, from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of their real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

5.      An order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

**<u>AS TO THE THIRTEENTH CLAIM:</u>**

**(Fraudulent Transfer Against Defendants J. Birnbaum, Liberty and C4C)**

1.      For return of the assets and monies fraudulently transferred to J. Birnbaum and Liberty.

2.      For injunctive relief enjoining further disposition by C4C or J. Birnbaum of any monies or properties of J. Birnbaum, Liberty or any other person or entity.

3.      For appointment of a receiver to ensure no further disposition by J. Birnbaum or C4C.

4.      For a temporary restraining order, preliminary injunction and/or permanent injunction enjoining C4C and J. Birnbaum and their agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7

them, and all entities controlled by them, from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of their real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

5.      An order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

**AS TO THE FOURTEENTH CLAIM:**

**(Appointment of Receiver Against Defendants J. Birnbaum and C4C)**

1.      For return of the assets and monies fraudulently transferred to J. Birnbaum and C4C.

2.      For injunctive relief enjoining further disposition by C4C or J. Birnbaum of any monies or properties of J. Birnbaum, Liberty or any other person or entity.

3.      For appointment of a receiver to ensure no further disposition by J. Birnbaum or C4C.

4.      For a temporary restraining order, preliminary injunction and/or permanent injunction enjoining C4C and J. Birnbaum and their agents, representatives, assigns, attorneys, affiliates, officers, servants and employees, those people in active concert or participation with them, and all entities controlled by them, from, directly or indirectly, transferring, conveying, concealing, secreting, hypothecating, pledging, or otherwise disposing of their real or personal property, except to pay for reasonably necessary living expenses as this Court deems appropriate.

5.      For an order appointing a temporary receiver to take control and manage the assets of C4C and J. Birnbaum, and issue a temporary restraining order and order to show cause regarding the appointment of a permanent receiver and issuance of a preliminary injunction.

6.      For an order causing all payments on account of "Claim Purchase Agreements" as defined in the Agreement to be paid directly to LF.

///

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**COMPLAINT**

BN 38656884v7

**AS TO ALL CLAIMS FOR RELIEF:**

      1.      For all costs of suit incurred herein;

      2.      For reasonable attorney's fees as may be provided by law;

      3.      For interest as may be provided by law; and

      4.      For such other and further relief, including, without limitation, injunctive relief, as the Court deems to be just and appropriate.


Dated: December 11, 2019           BUCHALTER
                                    A Professional Corporation


                                 By:   */s/Kevin T. Collins*
                                          KEVIN COLLINS
                                        Attorneys for Plaintiff
                                          LENDERS FUNDING, LLC,
                                        a New York limited liability company

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 38656884v7